Carmen M. WEST, Appellant,

v.

Hiltrud A. BUCHANAN, Appellee.

Nos. S–8147, 5134.

Supreme Court of Alaska.

June 11, 1999.

Arthur L. Robson, Robson Law Office, Fairbanks, for Appellant.

Jonathon A. Katcher, Pope & Katcher, Anchorage, for Appellee.

Before: MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

FABE, Justice.

### I. INTRODUCTION

Carmen West appeals the superior court's dismissal of her personal injury action on statute of limitations grounds. Although West initially sued the wrong person on the last day available under the statute of limitations, she substituted Hiltrud Buchanan as the named defendant within the period allowed by court rule for service of the complaint. Because we conclude that West's amended complaint substituting Buchanan as defendant should relate back to the time of its initial filing, we reverse.

### II. FACTS AND PROCEEDINGS

On June 17, 1993, Carmen West was involved in a traffic accident with Hiltrud Buchanan, who was driving a car owned by William Bembry. That summer, West retained counsel, who began negotiating on her behalf with Allstate Insurance, the insurer of the Buchanan/Bembry vehicle. The headings on Allstate's negotiation letters referred to "our insured: William Bembry."

By June 1995 West and Allstate had failed to reach a settlement agreement. On June 16, 1995, the last day available under the applicable statute of limitations, West filed a complaint against Bembry. West sent the complaint and summons to Bembry by certified mail on June 19, 1995, and Bembry received them on June 22, 1995.

About three months later, on September 25, 1995, West moved to amend her complaint to substitute Buchanan as the defendant. Bembry opposed on the ground of futility, arguing that the statute of limitations would bar the amended complaint since it could not properly "relate back" to the original filing. Superior Court Judge Ralph R. Beistline granted the motion to amend, reasoning that notice of the claim could be imputed to Bembry because he was "apparently in a close relationship" with Buchanan and that Buchanan "was a permissive user of his automobile." Judge Beistline also relied on the fact that "[n]egotiations were on-going to resolve the claim," concluding that it was "clear that the parties understood that a claim existed arising out of this accident."

Buchanan, now the named defendant, filed an answer and a Notice of Change of Judge. The case was reassigned to Superior Court Judge Niesje J. Steinkruger. Buchanan then moved for summary judgment based on West's failure to file within the applicable period of limitations. Judge Steinkruger granted Buchanan's motion for summary judgment "based upon the Statute of Limitations." Implicit in this holding was Judge Steinkruger's determination that West's amended complaint did not relate back to the date of her original complaint. West moved for reconsideration, but Judge Steinkruger denied this motion. West appeals.

### III. STANDARD OF REVIEW

■ The issues on review involve questions of law. We review such questions de novo.[1] We are not bound by the lower court's decision, but have the duty to "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[2]

### IV. DISCUSSION

A. *Buchanan's Notice of Change of Judge Was Timely.*

■ West first suggests that Buchanan's Notice of Change of Judge was untimely. This contention is without merit. Alaska Civil Rule 42(c)(3) provides, in part:

Where a party has been served or enters an action after the case has been assigned to a specific judge, a notice of change of judge shall also be timely if filed by the party before the commencement of trial

1. *See Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

2. *Id.*

and within five days after a party appears or files a pleading in the action.

West argues that because the amendment to her complaint related back to the time of its initial filing, Buchanan should not have been permitted to peremptorily challenge Judge Beistline. But West's contention rests on a false premise. West asserts that "Alaska Rule of Civil Procedure 42(c)(1) aggregates both Bembry and Buchanan as a single party." This interpretation is incorrect. Civil Rule 42(c)(1) explains only that "[t]wo or more parties aligned on the same side of an action ... shall be treated as one *side* for purposes of the right to a change of judge." (Emphasis added.) In its discussion of the timeliness of peremptory challenges, Civil Rule 42(c)(3) explicitly refers to parties, not sides. Moreover, the position West advocates would require Buchanan to have peremptorily challenged Judge Beistline before she was made a party to the action.[3] To adopt West's assertion would eliminate the right of persons in Buchanan's position to peremptorily challenge a judge. The decision to allow Buchanan to peremptorily challenge Judge Beistline was correct.

**B. *Judge Steinkruger Did Not Err in Declining to Follow the Law of the Case.***

■ Although Judge Beistline concluded that the statute of limitations did not bar amendment of the complaint because the amendment would properly relate back to the date the complaint was filed, the case was then reassigned to Judge Steinkruger, who viewed this issue differently. In granting Buchanan's motion for summary judgment based on the statute of limitations, Judge Steinkruger implicitly held that West's

amended complaint would *not* relate back to the date her complaint was originally filed, thus overruling Judge Beistline's earlier decision. West suggests that Judge Steinkruger erred by failing to follow the law of the case.[4]

■ *Stepanov v. Gavrilovich*[5] provides guidance on this issue. In *Stepanov,* we explained that the law of the case doctrine "expresses the practice of courts generally to refuse to reopen what has been decided."[6] This practice is not an absolute rule of law. Rather it is a matter of "sound judicial policy."[7] We recognized the power of one trial court judge to overrule another, in the proper exercise of judicial discretion.[8] And, "[w]hile this power is not to be used lightly,"[9] we observed that it is "entirely reasonable for a judge whose responsibility it is to try a case to reconsider and reverse an earlier ruling if convinced that that ruling was erroneous."[10] Judge Steinkruger was within her discretion to reconsider whether West's amended complaint would properly relate back to the date her complaint was originally filed.

**C. *West's Amendment Substituting Buchanan as Defendant Relates Back to the Initial Filing of the Complaint.***

■ In order to determine whether West's amended complaint, which substituted Hiltrud Buchanan as the defendant, relates back to the original complaint, we must interpret the language of Alaska Civil Rule 15(c). This provision sets forth the criteria for an amendment to relate back to the filing of the original pleading. The rule states:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the

---

**3.** AS 22.20.022, by its terms, permits only "a party or a party's attorney" to peremptorily challenge a judge.

**4.** West also refers us to Civil Rule 77(k), which deals with the time limits within which motions may be reconsidered. This reference is off-point. The motion *for summary judgment* considered by Judge Steinkruger did have an issue in common with the motion *to amend* considered by Judge Beistline. But Judge Steinkruger did not reconsider the motion *to amend.* Civil Rule 77(k) is inapplicable.

**5.** 594 P.2d 30 (Alaska 1979).

**6.** *Id.* at 36 (quoting *Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912)).

**7.** *Id.*

**8.** *See id.*

**9.** *Id.* at 36.

**10.** *Id.*

original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, *within the period provided by law for commencing the action against the party to be brought in by amendment,* that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.[11]

■ In determining how to interpret a particular rule, we are guided by the purpose of the rule.[12] The purpose of Rule 15(c) is remedial: The rule is meant to liberalize the rules of pleading and to "allo[w] amendments for clarification and/or correction of the original complaint without being barred by the statute of limitations."[13] And the purpose of statutes of limitations is to protect defendants from the injustices that may result from the prosecution of stale claims.[14]

With these goals in mind, we turn to the issue before us: whether Buchanan, as the party who was brought in by amendment, received notice of the institution of the action and knew, or should have known, that she was the proper defendant "within the period provided by law for commencing the action against [her]."[15] Buchanan suggests that

because the lawsuit was filed on the last day available under the statute of limitations, and she did not learn of it that day before the statute expired, the amendment substituting her as a party cannot relate back to the original complaint.

Buchanan argues that our decision in *Adkins v. Nabors Alaska Drilling, Inc.*[16] is dispositive of this issue. In *Adkins*, Adkins had timely filed suit against Standard Oil and others for personal injuries. After the statute of limitations ran, Adkins attempted to amend his complaint to add Nabors, arguing that this was permitted by Rule 15(c).[17] Adkins's position was that notice of the underlying facts of the action was the same as notice of the institution of the action.[18] Relying on a federal court's interpretation of the word "action" in the analogous federal rule,[19] we rejected this claim:

> Under this interpretation, any knowledge that Nabors may have had concerning Adkins' injury is irrelevant. Adkins must prove that Nabors actually knew of his suit against Standard prior to the limitations period. Adkins filed suit on July 20, 1977. The limitations period expired on August 9, 1977. In order for the amendment to relate back, Nabors must have learned of the lawsuit during this twenty-day period.[20]

Thus, we interpreted the notice provision of Civil Rule 15(c) to require notice of the law-

11. Alaska R. Civ. P. 15(c) (emphasis added).

12. *See, e.g., Van Alen v. Anchorage Ski Club, Inc.,* 536 P.2d 784, 787 (Alaska 1975) ("We have repeatedly stated that Alaska's discovery rules should be given a liberal interpretation in order to effectuate the underlying purpose of those rules.").

13. Lawrence A. Epter, *An Un–Fortune–Ate Decision: The Aftermath of the Supreme Court's Eradication of the Relation–Back Doctrine,* 17 Fla. St. U.L.Rev. 713, 718 (1990) (discussing the federal counterpart to Alaska Civil Rule 15); *see also* Laurie Helzick, Note, *Looking Forward: A Fairer Application of the Relation Back Provisions of Federal Rule of Civil Procedure 15(c),* 63 N.Y.U. L.Rev. 131, 140 (1988) ("Relation back was developed in order to liberalize the rules of pleading for the plaintiff without contravening the policies behind the statute of limitations.") (dis-

cussing the federal counterpart to Alaska Civil Rule 15).

14. *See Pedersen v. Zielski,* 822 P.2d 903, 907 (Alaska 1991).

15. Alaska R. Civ. P. 15(c).

16. 609 P.2d 15 (Alaska 1980).

17. *See id.* at 17–18.

18. *See id.* at 20–21.

19. *See id.* At the time of *Adkins,* the federal rule was virtually identical to Alaska's Rule 15(c). *Compare* Alaska R. Civ. P. 15(c) *with* Fed. R.Civ.P. 15(c) (1991) (amended 1991).

20. *Id.* at 21.

suit, as opposed to mere notice of the facts underlying the action.[21]

We disagree that *Adkins* controls this case. *Adkins* focused on the interpretation of the term "action" as used in the phrase "notice of the institution of the action," rather than the phrase "within the period provided by law for commencing the action against [the party]." And contrary to the dissent's assertion,[22] we did not determine in *Adkins* that "the period provided by law for commencing the action" refers to the limitations period. Thus, *Adkins* did not address a situation, such as this, in which the substituted defendant learned of the plaintiff's cause of action after the statute of limitations had run but before expiration of time for service on the original defendant.

Moreover, after we decided *Adkins*, we suggested in *Siemion v. Rumfelt*[23] that notice within the time for service could be adequate under Rule 15(c). In *Siemion*, we decided that a complaint against Jeffrey Rumfelt's father could be amended to include Jeffrey because of our view that "Jeffrey Rumfelt received sufficient notice of the subject claim" and our "belie[f that] it is reasonable to infer that Jeffrey had notice of the institution of the suit *within the same time he would have known had he been a properly named defendant.*"[24]

■ While Civil Rule 15(c) is not a model of clarity, we conclude that the language "within the period provided by law for commencing the action" must be interpreted to encompass, when the complaint is timely filed, the reasonable time for service of process permitted by the rule for a named defendant. The rule's language combines the separate concepts of commencement of an action with notice of the institution of the action. But an action may be filed and thus

commenced without imparting notice to the defendant. Notice is usually given by service, which may take place as long as 120 days after filing.[25] As a result, a properly named defendant may not receive notice of an action until 120 days after the statute of limitations runs. We can think of no reason why the rule would require the added defendant to receive notice earlier than a named defendant who is sued on the last day of a limitations period. Thus, we conclude that Rule 15(c) refers to the process of commencing an action, rather than merely filing a complaint; that process includes both timely filing and timely service.

We note that the prevailing interpretation of Rule 15(c)'s federal counterpart is not a bar to our decision today. In *Schiavone v. Fortune*,[26] the United States Supreme Court construed Federal Rule of Civil Procedure 15(c)(3) to require notice to the intended defendant within the time for filing a complaint under the applicable limitations period.[27] The *Schiavone* court stated that the "plain language" of the Rule dictated its result even though "there is an element of arbitrariness here."[28] But as one commentator has noted, the "disputed language is anything but plain, much less clear."[29] Justice Stevens, joined by two other justices, came to a different conclusion than the Court's majority when interpreting the same "plain language":

> The language ... does not, however, refer to the statute of limitations. Rather, it describes "the period provided by law for commencing the action *against him*" (emphasis added). As I have noted, that period includes two components, the time for commencing the action by the filing of a complaint and the time in which the action "against him" must be implemented

21. *See id.* at 21.

22. *See* Dissent at 1073.

23. 825 P.2d 896 (Alaska 1992).

24. *Id.* at 900 (emphasis added).

25. *See* Alaska R. Civ. P. 4(j).

26. 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986).

27. *See id.* at 30–31, 106 S.Ct. 2379.

28. *Id.*

29. Epter, *supra* note 13, at 735 ("If the Court's characterization of this language were accurate, *Schiavone* would never have been decided by the Supreme Court: the conflicting and inconsistent interpretation of that language is precisely what led to the grant of certiorari.").

by the service of process. If the party is sufficiently described in the original complaint to avoid any possibility of prejudice to the defendant, I see no reason for not construing the Rule to embrace both components of the period provided by law for bringing a timely action against a particular defendant.[30]

Furthermore, as even the dissent acknowledges,[31] commentators have heavily criticized this result.[32] As one commentator explains, the *Schiavone* decision is troubling for several reasons:

> The majority's decision effectively vitiates the purposes of the Federal Rules of Civil Procedure in general and of Rule 15(c) in particular. . . . Moreover, the *Schiavone* Court's interpretation is clearly not in accord with Rule 8(f) in that the construction of Schiavone's pleading cannot, in any light, be seen as accomplishing substantial justice.
>
> ∴. . [Finally,] [i]f a complaint against a particular defendant must be filed within the limitations period to survive Rule 15(c) scrutiny, as the Court seems to suggest, there is no need for the relation-back doctrine at all where the changing of a party is involved.[33]

Finally, other state courts, when faced with interpreting state rules analogous to Federal Rule of Civil Procedure 15(c)(3) in the aftermath of *Schiavone*, have not felt constrained to follow the *Schiavone* decision with "blind devotion."[34] As the Arizona Supreme Court explained, "[i]t would be foolish indeed to interpret such a rule so narrowly as to allow its use only in those cases in which it was not needed because the statute of limitations had not yet run."[35]

Because we are not bound by a decision of the United States Supreme Court when interpreting a state rule of civil procedure and because we find these critiques of *Schiavone* persuasive, we decline to follow the *Schiavone* rationale. As long as a claim is filed within the time permitted by the applicable statute of limitations and served within the time permitted for service, the purposes of both Rule 15(c) and our statutes of limitations are satisfied.[36] As Justice Stevens stated in his dissent in *Schiavone*:

> The principal purpose of Rule 15(c) is to enable a plaintiff to correct a pleading error after the statute of limitations has run if the correction will not prejudice his adversary in any way. That purpose is defeated—and the Rule becomes largely superfluous—if it is construed to require the correction to be made before the statute has run.[37]

---

30. *Schiavone*, 477 U.S. at 37, 106 S.Ct. 2379 (Stevens, J., dissenting).

31. *See* Dissent at 1074–75.

32. *See, e.g.*, Robert D. Brussack, *Outrageous Fortune: The Case for Amending Rule 15(c) Again*, 61 S. Cal. L.Rev. 671, 672–73 (1988); Epter, *supra* note 13, at 727–35; Helzick, *supra* note 13, at 148–49.

33. Epter, *supra* note 13, at 731–33.

34. *Ritchie v. Grand Canyon Scenic Rides*, 165 Ariz. 460, 799 P.2d 801, 805 (1990); *see also Brown v. Winn–Dixie Montgomery, Inc.*, 669 So.2d 92, 95–97 (Miss.1996) (noting that Mississippi courts were "not bound to blindly apply the observation or interpretation [of Rule 15] by the federal court"); *Hughes v. Water World Water Slide, Inc.*, 314 S.C. 211, 442 S.E.2d 584, 586 (1994) (declining to follow *Schiavone* even though South Carolina had not adopted the 1991 amendment to Fed.R.Civ.P. 15(c) setting the time allowed for changing the defendant in accord with federal law rather than state statutes of limitations).

35. *Ritchie*, 799 P.2d at 808.

36. Although the dissent complains that we are deciding this issue on a ground not argued by the parties, Buchanan challenged Judge Beistline's reliance on our suggestion in *Siemion* that a complaint may be amended to include a defendant who has "had notice of the institution of the suit within the same time he would have known had he been a properly named defendant." Moreover, the applicability of the *Schiavone* rule to this case was argued at length by Buchanan in her brief to this court. And as the *Schiavone* dissent and the commentators who criticize the *Schiavone* majority opinion recognize, a properly named defendant may not receive notice of an action until service, which under both the Alaska and Federal Rules may take place as long as 120 days after filing. Thus, although the parties do not specifically refer to Civil Rule 4(j) in their briefs, its applicability to the issue before us is manifest.

37. *Schiavone*, 477 U.S. at 38, 106 S.Ct. 2379 (Stevens, J., dissenting).

Our interpretation of Rule 15(c) better serves the rule's purpose than a reading that would preclude the relation back of an amendment where the intended defendant receives notice that is timely but that comes after the deadline for filing the complaint. We note that Federal Rule of Civil Procedure 15(c) has been amended to substitute "within the period provided by law for commencing the action against him" with "the period provided by Rule 4[ ] for service of the summons and complaint." [38] We regard this as further evidence both of the purpose of the rule and that our interpretation is faithful to the achievement of this purpose.

We thus conclude that West has met the requirements of Rule 15(c): She has proved that Buchanan received notice of the institution of the action and knew or should have known before expiration of the period for commencement of the action that Buchanan was the proper party in the suit. In this case, Buchanan received notice identical to Bembry's. Although West's complaint named Bembry as the driver, both Bembry and Buchanan knew that Buchanan was the driver. According to Buchanan, she accompanied Bembry to pick up the certified letter containing the complaint. Upon reading the complaint, both Bembry and Buchanan should have found it obvious that the complaint mistakenly named Bembry rather than Buchanan.

Given these circumstances, to say that Bembry received timely and adequate notice but Buchanan did not would seem little more than senseless formalism. Thus, it was error for the superior court to dismiss West's action against Buchanan on statute of limitations grounds.

## V. CONCLUSION

Because we hold that West's amended complaint substituting Buchanan as defendant related back to the time of its initial filing, we REVERSE the superior court's dismissal of West's action against Buchanan and REMAND for proceedings consistent with this opinion.

**EASTAUGH,** Justice, with whom **COMPTON,** Justice, joins, dissenting.

The result the court's opinion reaches today is foreclosed by the controlling rule, our past decisions, and authoritative interpretation of the identical federal rule. And it should also be foreclosed by reticence to rely on a theory not raised or argued by the parties. I would affirm dismissal of West's amended complaint as untimely; it did not relate back to West's timely original complaint.

### A. Facts

While driving William Bembry's car, Hiltrud Buchanan collided with Carmen West's vehicle. The collision occurred on June 17, 1993. On June 16, 1995, West commenced suit by filing a complaint naming William Bembry as the only defendant. The two-year statute of limitations expired the day after West sued Bembry. Because West served Bembry by mail, Bembry did not receive notice of the lawsuit until after the limitations period had run.

On September 25, 1995, more than three months later, and thus well after the limitations period had expired, West amended her complaint to substitute Buchanan as the only defendant. West has not explained why her original complaint named William Bembry; when deposed, West testified that she realized on the day of the accident that the driver of Bembry's car was a woman. It is undisputed that Buchanan (and Bembry) did not learn of the lawsuit until after the limitations period expired.

### B. The Court's Decision

The court's opinion holds that the amended complaint naming Buchanan, although filed after the statute of limitations had run, was timely because it related back to the timely complaint that named only Bembry. Because notice that *Bembry* had been sued was received by *Bembry* and *Buchanan* after the statute of limitations ran, but within the 120–day period Alaska Civil Rule 4(j) allowed for serving *Bembry,* the opinion reasons that the service grace period must be included "with-

---

**38.** *Compare* Fed.R.Civ.P. 15(c) *with* Fed.R.Civ.P. 15(c) (1991) (amended 1991).

in the period provided by law for commencing the action," as provided by Alaska Civil Rule 15(c), in deciding whether the action against *Buchanan* was timely.

## C. *Alaska Civil Rule 15(c)*

A complaint must be filed within the time specified by law, usually by the applicable statute of limitations adopted by the legislature. Absent exceptions not applicable here, an amended complaint filed after the limitations statute has run is untimely and must be dismissed unless the requirements of Alaska Civil Rule 15(c) are met. If they are met, the amended complaint relates back to the date when the original complaint was filed.

In this case, West timely commenced suit against the wrong defendant; she attempted to sue the right defendant only after the statute had run. Rule 15(c) treats this type of amendment differently from an amendment that simply changes the claims. "Rule 15(c)['s] requirements are strictly construed when the amendment adds a new defendant."[1] Rule 15(c) requires that Buchanan have received, "within the period provided by law for commencing the action," notice that the action had been instituted.

The opinion defines this period to include the time set by the applicable statute of limitations plus the 120–day service grace period provided by Rule 4(j).

There are two main problems with this analysis. First, it is contrary to our Civil Rules, particularly Rule 15(c). Our rules distinguish between commencing an action and serving the defendant. Rule 3 addresses the "commencement" of an action. An action is "commenced" by filing a complaint.[2] Rule 4 deals with process, i.e., serving the complaint. Subsection j of Rule 4 sets the time within which the plaintiff must serve a timely filed complaint on the defendant; it does not enlarge the time for commencing an action. Rule 15(c) observes the same distinction in language that mirrors the operative language in Rule 3; the operative language in Rule 4(j) is alien to the part of Rule 15(c) here in issue.

The opinion's reliance on the service grace period conflates the purpose of that period with the doctrine of relation-back. Rule 4(j)'s service grace period sets the time in which the plaintiff must achieve service of a timely filed complaint on a defendant named in the complaint. Rule 15(c)'s doctrine of relation-back enlarges the time for correcting the name of the defendant if the proper defendant has received, within the limitations—not service—period, notice that suit was filed. The service grace period assumes a timely complaint; it does not enlarge the time for filing a timely complaint. Our decision today, however, engrafts the service grace period onto the limitations period to make timely an amended complaint that was not timely. Thus, it fails to distinguish between commencing an action and serving process.

The opinion also fails to distinguish between Bembry and Buchanan. It assumes that what is fair for Bembry (who could be served after the limitations period had run) is also fair for Buchanan. But their situations must be distinguished. Bembry was named in a timely complaint and Buchanan was not. Rule 4(j) has only one possible application to Buchanan: it required that she be served within 120 days after the amended complaint was filed. Moreover, we should not necessarily assume that Bembry and Buchanan must be treated identically when applying the service grace period. If Buchanan had gone to the courthouse on the second anniversary of the accident and asked if she was a defendant in a lawsuit, she would have learned that she was not. She was thus not in the position of a defendant who was timely sued but not yet served. This distinction may not be conclusive, and does not preclude amending the rule; but it certainly justifies applying the rule as written absent any amendment.

The opinion states that "to say that Bembry received timely and adequate notice but Buchanan did not would seem little more

---

**1.** *Siemion v. Rumfelt,* 825 P.2d 896, 899 n. 3 (Alaska 1992) (quoting *McCutcheon v. State,* 746 P.2d 461, 469 n. 16 (Alaska 1987)).

**2.** *See* Alaska R. Civ. P. 3(a) ("A civil action is commenced by filing a complaint with the court.").

than senseless formalism."[3] But the distinction the opinion rejects is embedded in our rule, and we should observe it. The opinion asserts that Rule 15(c) is "not a model of clarity."[4] Perhaps so, but it is sufficiently clear that we should apply it as written.

The second problem inevitably follows. The opinion changes the substantive law which governs the time for commencing an action. Even assuming Rule 4(j) purported to add 120 days to "the period provided by law for commencing" an action, it would necessarily extend every limitations period by 120 days as long as notice were received during that 120-day period. We should avoid such a substantive effect of a procedural rule. I read the words "provided by law" to refer to substantive law, not mere procedure. Our rule-making power does not give us authority to specify the time for commencing suit; that is for the legislature. We sometimes decide whether substantive court-made "law" delays or tolls the running of the statutory limitations period adopted by the legislature, but that is not what we are doing here.[5]

### D. *Our Prior Decisions*

In my view, our decision in *Adkins v. Nabors Alaska Drilling, Inc.,*[6] controls. There we rejected Adkins's attempt to amend his complaint to add Nabors after the statute of limitations had run. The court distinguishes *Adkins* from this case on the theory that Nabors did not receive notice of the suit until after the service period had expired.[7] But that distinction ignores the rationale that governed *Adkins:* that the critical language in Rule 15(c)—"the period

provided by law for commencing the action"—refers to the "limitations period."[8] That rationale was not mere dictum, but controlled the result.

The court looks to *Siemion v. Rumfelt,*[9] to support its holding.[10] In *Siemion,* we permitted an amended complaint to relate back when the newly-named defendant, Jeffrey, "had notice of the institution of the suit within the same time he would have known had he been a properly named defendant."[11] Because Rule 4(j) contemplates the possibility a properly named defendant will not receive notice of an action until 120 days after the statute of limitations expires, the court reads *Siemion* to support its holding here. But Jeffrey in fact had constructive notice within the applicable period of limitations,[12] and *Siemion* cited *Adkins* with approval.[13]

Moreover, in *Farmer v. State,*[14] relying upon language from the United States Supreme Court's opinion in *Schiavone v. Fortune,*[15] we stated that the relation back question was whether the defendant received notice within the *limitations period.*[16]

Relation back is dependent upon four factors, all of which must be satisfied: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third

---

3. Op. at 1071.

4. Op. at 1069.

5. *See, e.g., Gudenau & Co. v. Sweeney Ins., Inc.,* 736 P.2d 763, 766–69 (Alaska 1987) (discussing conditions under which Alaska courts will delay or toll running of statutory limitations periods).

6. 609 P.2d 15 (Alaska 1980).

7. *See* Op. at 1068–69.

8. 609 P.2d at 21.

9. 825 P.2d 896 (Alaska 1992).

10. *See* Op. at 1068–1069.

11. *Siemion,* 825 P.2d at 900.

12. *See id.*

13. *See id.* at 899 n. 3.

14. 788 P.2d 43 (Alaska 1990).

15. 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986).

16. *See* 788 P.2d at 49 (emphasis added).

requirements must have been fulfilled *within the prescribed limitations period.*[17]

We have never disavowed our reliance on *Schiavone*'s equation of the statutory limitations period with the language "the period provided by law for commencing the action." Indeed, *Siemion* approvingly cites *Schiavone* and quotes the same language we quoted in *Farmer*.[18]

It seems unlikely the court in *Siemion* intended to hold that the time for commencing suit is enlarged by the service grace period, given that it did not cite Rule 4(j) or discuss the service grace period.

### E.  *Schiavone v. Fortune*

Because Federal Rule of Civil Procedure 15(c) was, until its amendment in 1991, identical to our Rule 15(c), federal interpretation of the unamended federal rule provides useful guidance. Until 1986, there was a dispute in the federal courts concerning the meaning of Rule 15(c)'s qualifying language—that notice must have been received "within the period provided by law for commencing the action."

> Some courts ruled that notice had to be received before the statute of limitations had run. To rule otherwise arguably would have deprived the new party of the right to invoke the statute of limitations defense and that might raise a question of procedural due process. Other courts noted that the rule was satisfied as long as the action was filed within the statutory period and notice was accomplished within the time allowed for service of process.[19]

That dispute, however, was resolved when the Supreme Court decided *Schiavone v. Fortune*.[20] As explained in a leading treatise:

> Justice Blackmun, writing for the majority, concluded that notice must be received within the statute of limitations and it is not sufficient to find that notice is given within the time for service. This conclusion, he noted, was required by the "plain language" of Rule 15(c). Further, he acknowledged
>
> > ... there is an element of arbitrariness here, but that is a characteristic of any limitations period. And it is an arbitrariness imposed by the legislature and not by the judicial process.[21]

The result reached in *Schiavone* was criticized by commentators.[22] Nonetheless, the federal courts, including the Supreme Court, adhered to *Schiavone*'s reading of Federal Civil Rule 15(c) prior to its amendment.[23] We also approvingly quoted from *Schiavone* in *Farmer* and *Siemion*.[24] Our court today disagrees with the six-justice majority in *Schiavone*. In interpreting our rules, we are certainly not bound by the federal courts' interpretations of their rules. But because the plain language which convinced the Supreme Court is also found in our rule, I would place significant weight on that Court's reasoned result.

Nonetheless our opinion today does invoke the federal experience in another way. In interpreting Alaska Civil Rule 15(c), our opinion relies on the post-*Schiavone* amendment of Federal Civil Rule 15(c).[25] The 1991 amendment rewrote the federal rule to permit the result the court desires here.[26] The opinion finds the 1991 amendment to be "further evidence of the purpose of the rule and that our interpretation is faithful to the achievement of this purpose."[27] This is pro-

---

**17.** *Id.* (quoting *Schiavone*, 477 U.S. at 29, 106 S.Ct. 2379) (emphasis added).

**18.** *See Siemion*, 825 P.2d at 899.

**19.** 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1498, at 107–13 (1990) (footnotes omitted).

**20.** *See* 477 U.S. at 30–31, 106 S.Ct. 2379.

**21.** Wright, at 113–14 (footnote omitted) (quoting *Schiavone*, 477 U.S. at 31, 106 S.Ct. 2379).

**22.** *See id.* at 114.

**23.** *See id.*

**24.** *See Farmer*, 788 P.2d at 49; *Siemion*, 825 P.2d at 899.

**25.** *See* Op. at 1070–71.

**26.** *See* Fed.R.Civ.P. 15 advisory committee's note (1991).

**27.** Op. at 1070–71.

blematic. As a matter of construction, I would not read an amendment that permits a particular result to support a pre-amendment interpretation contrary to the unamended language and its prevailing interpretation. That the federal rule was amended suggests that we should rewrite our rule, not that we should simply reread it. Finally, for reasons discussed above, I think the court errs in assuming that Rule 15(c) has an underlying purpose that justifies the interpretation reached today.

### F. Reliance on the Service Grace Period

Apart from my substantive disagreement with relying on the service grace period, it seems inappropriate to rely on it here. This issue was not preserved in the superior court.[28] West's opening and closing appellate briefs say nothing about Rule 4(j) or the 120-day service grace period.[29] West instead asserts other theories—correctly rejected by the court here—on which her amended complaint should be considered timely. Because West did not even raise the issue, it is not surprising that Buchanan's appellee's brief does not discuss the issue, either. Buchanan could have persuasively argued that the service grace period and Rule 4(j) have no application here. The court's opinion consequently relies on a rule not cited by appellant in support of a rationale not advanced by appellant to reach a result that is not justified by our rules as written or by our past decisions.

### G. Conclusion

I agree with the court's resolution of the issues raised by West. But I disagree with the court's resolution of the issue not raised by West, and would therefore affirm the judgment of dismissal.

---

28. *See Rowen v. Rowen,* 963 P.2d 249, 255 (Alaska 1998) (refusing to consider father's eligibility for "visitation credit" to reduce child support owed when father failed to raise issue at trial); *Brooks v. Brooks,* 733 P.2d 1044, 1053 (Alaska 1987) (stating that matters not raised at trial will not be considered on appeal).

29. We have consistently held that the failure to argue a point in a brief constitutes an abandonment of it and we will not consider it on appeal. *See Petersen v. Mutual Life Ins. Co.,* 803 P.2d 406, 411 n. 8 (Alaska 1990); *State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 528 (Alaska 1980); *Lewis v. State,* 469 P.2d 689, 691 n. 2 (Alaska 1970).